# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

RONNIE L. BLAKENSHIP,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:18-1309

UNITED STATES OF AMERICA,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This suit arises out of the United States of America's pursuit of criminal charges against plaintiff Ronnie Blankenship. Having been found not guilty, Blankenship seeks damages for malicious prosecution and other claims pursuant to the Federal Tort Claims Act (FTCA). The United States moves to dismiss for lack of subject-matter jurisdiction. ECF No. 42. Because the FTCA exempts Blankenship's claims, the Court **GRANTS** the United States' motion.

## I. BACKGROUND

Blankenship alleges the following facts. ECF No. 34. The United States Department of Veterans Affairs employed Blankenship at a VA Medical Center near Huntington, West Virginia. *Id.* ¶¶ 1–2. Blankenship learned that another employee discarded an inoperable meat slicer into a Medical Center dumpster. *Id.* ¶ 25. With the help of his co-worker John Erik Stone,[1] Blankenship took the meat slicer. *Id.* ¶¶ 30–32. He claims the VA has no policy prohibiting the taking of

---

[1] Stone filed a separate suit in this district based on the same underlying facts. *See* Civil Action No. 3:19-cv-0538.

abandoned items from dumpsters and that VA police officers do not have authority to arrest someone for doing so. *Id.* ¶¶ 36–38.

After refurbishing the meat slicer, Blankenship asked Stone to sell it on Facebook. *Id.* ¶¶ 41, 43. Several months later, VA police officer Darrell Booth received a complaint that a meat slicer similar to the one missing was for sale on Facebook. *Id.* ¶¶ 6, 47. He notified Huntington Police Department Detective Sargent Brian Lucas and Federal Bureau of Investigation Special Agent Thomas Dominski and informed them he was going to contact the seller over Facebook. *Id.* ¶¶ 49–50. Booth posed as a potential buyer and arranged a meeting to purchase the meat slicer from Blankenship. *Id.* ¶¶ 52–58. At the meeting, Lucas confirmed the meat slicer was the same one taken from the VA Medical Center and arrested Blankenship. *Id.* ¶ 73.

At the request of VA police officers Booth and Joseph Wayman, Lucas filed a criminal complaint with the Magistrate Court of Cabell County, West Virginia, for a violation of West Virginia Code § 61-03-18 (Receiving or Transferring Stolen Goods). *Id.* ¶¶ 80–81. The court dismissed the complaint upon motion by the state. *Id.* ¶ 83. Booth and Wayman then filed a complaint with the Magistrate Court of Wayne County, West Virginia, for violations of West Virginia Code § 61-03-13(a) (Grand Larceny) and § 61-10-31 (Conspiracy). *Id.* ¶¶ 86–90. The state later moved to dismiss the felony charges with the intention of refiling them as misdemeanor petit larceny. *Id.* ¶ 112. A jury ultimately found Blankenship not guilty. *Id.* ¶ 118.

Blankenship now alleges three counts against the United States for damages under state law pursuant to the FTCA: malicious prosecution, intentional infliction of emotional distress, and defamation. *Id.* ¶¶ 120–145. The United States moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). ECF No. 42.

# II. LEGAL STANDARD

Under Rule 12(b)(1), a federal court must dismiss a claim if the court lacks subject-matter jurisdiction. A party can challenge subject-matter jurisdiction under Rule 12(b)(1) in two ways: "facial attacks" and "factual attacks." *Thigpen v. U.S.*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rev'd on other grounds, Sheridan v. U.S.*, 487 U.S. 392 (1988). A "facial attack" argues the complaint's allegations are insufficient to sustain the court's jurisdiction. *Id*. If a party makes a "facial attack," the court must proceed as it would on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Id.* The court accepts the complaint's allegations as true and does not consider materials outside the pleadings. *Id*. (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) and *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)).

Alternatively, a "factual attack" challenges the truth of the complaint's allegations. *Id*. The court should "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219 and *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). The court should apply the summary judgment standard, under which "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citation omitted). Dismissal is only appropriate if "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (citation omitted).

The United States does not explain its intended 12(b)(1) standard, and its Motion contains elements of both a facial and factual attack. Considered as a whole, the Motion is best treated as a factual attack. The United States argues key allegations are false, including Blankenship's

assertions that the VA lacks policies regarding the abandonment of inoperable property, that no policy prohibits VA employees from taking abandoned property, and that VA police officers have no authority to arrest employees for removing discarded property. ECF No. 43, at 10 (citing ECF No. 34 ¶¶ 28, 36, 37). To correct these allegations and argue a lack of subject-matter jurisdiction, the United States relies on significant extrinsic evidence, to which Blankenship responds with his own evidence. The parties thus ask the Court to move beyond the corners of the Amended Complaint and gauge the sufficiency of their evidence. Therefore, the summary judgment standard applies, and dismissal is only appropriate if "the material jurisdictional facts are not in dispute" and the United States "is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768 (citation omitted).

### III. DISCUSSION

The Federal Tort Claims Act does not create a new cause of action. *Medina v. U.S.*, 259 F.3d 220, 223 (4th Cir. 2001). Rather, the statute waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." *Id.* (citing 28 U.S.C § 1346(b)). Section 2680, however, exempts certain categories of claims from the waiver. *See* 28 U.S.C. § 2680(a)–(n). The United States argues Blankenship's claims are exempted and therefore precluded by sovereign immunity. *See* ECF No. 43.

**A. The FTCA bars Blankenship's defamation claim.**

Count III of the Amended Complaint is a defamation claim alleging the United States "communicated false, exaggerated, and defamatory statements about the Plaintiff to other VA Medical Center employees and people in the community from April 2015 until December 2017." ECF No. 34 ¶ 136. However, 28 U.S.C § 2680(h) bars any claim under the FTCA arising out of

"libel, slander, [or] misrepresentation," which includes defamation. *See Talbert v. U.S.*, 932 F.2d 1064, 1066 (4th Cir. 1991). Sovereign immunity therefore applies, and the Court dismisses Count III.

**B. The FTCA's discretionary function exception bars Blankenship's other claims.**

The United States also moves to dismiss Counts I and II based on the FTCA's discretionary function exception. *See* ECF No. 43. This exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) (emphasis added). The plaintiff bears the burden of showing the discretionary function exception does not apply. *Welch v. U.S.*, 409 F.3d 646, 650–51 (4th Cir. 2005).

The Supreme Court established a two-part test to determine whether the exception bars a suit under the FTCA. *See U.S. v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz v. U.S.*, 486 U.S. 531 (1988). First, the court must determine whether the conduct at issue was discretionary, involving "an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. An act is not discretionary if a mandatory federal statute, regulation, or policy prescribes a specific course of action. *Baum v. U.S.*, 986 F.2d 716, 720 (4th Cir. 1993). When a mandatory directive exists, the discretionary function exception does not apply if the plaintiff can show the actor failed to adhere to the directive. *Id.* (citing *Berkovitz*, 486 U.S. at 536).

If an act is discretionary, the court proceeds to the second prong and determines whether the challenged conduct is "based on public policy considerations." *Berkovitz*, 486 U.S. at 531. The court focuses on "the nature of the actions taken and on whether they are susceptible to policy

analysis," rather than "the agent's subjective intent in exercising the discretion." *Gaubert*, 499 U.S. at 325. Importantly, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 324.

### 1. The challenged conduct was discretionary.

The United States begins its discussion of the test's first prong by challenging several allegations in the Amended Complaint. ECF No. 43, at 10. Specifically, the United States challenges Blankenship's claims that the VA lacks policies regarding the abandonment of inoperable property, that no policy prohibits VA employees from taking abandoned property, and that VA police officers have no authority to arrest employees for removing discarded property. *Id.* (citing ECF No. 34 ¶¶ 28, 36, 37). To the contrary, the United States cites 38 C.F.R. § 1.218(a)(3), which prohibits "the willful destruction, damage, or removal of Government property or any part thereof [from VA facilities], without authorization . . . ." *Id.* at 10–11. The United States also claims a 2013 VA policy expressly prohibits the "theft, and/or removal of any VA property," including "equipment," "trash," and "contractor removed items." *Id.* at 13 (citing ECF No. 42, at 101).

As the United States explains, federal law grants VA police officers significant enforcement and arrest powers "with respect to acts occurring on [VA] property." *Id.* at 10 (citing 38 U.S.C. § 902); *see also* 38 C.F.R. § 2.6(a)(8) (providing that VA police officers have "the power to enforce Federal laws and [VA] regulations, to investigate violations of those laws and to arrest for crimes committed on [VA] property to the full extent provided by [VA] policies and procedures"). These powers include the ability to "conduct investigations, on and off [VA] property, of offenses that may have been committed on property under the original jurisdiction of

[the VA], consistent with agreements or other consultation with affected Federal, State, or local law enforcement agencies." ECF No. 43, at 10 (citing 38 U.S.C. § 902(a)(1)(E)).

While VA police officers have authority to conduct investigations, the United States argues that no mandatory policy directs officers' actions during an investigation regarding stolen VA property. *Id.* at 11 (citing ECF No. 42, at 12 ¶ 17; ECF No. 42, at 106 ¶ 16). Thus, the United States argues, VA police officers exercise significant discretion when conducting investigations, and the discretionary function exception applies. *Id.* at 10; *see Pooler v. U.S.*, 787 F.2d 868, 870–71 (3d Cir. 1986) (affirming district court's holding that VA officials' choice of investigative techniques and determination to initiate criminal charges against the plaintiff were discretionary governmental functions), *abrogated on other grounds by Millbrook v. U.S.*, 569 U.S. 50 (2013).

In response, Blankenship first argues that VA police officers are required to investigate reported crimes. ECF No. 45, at 6. He cites VA Directive 0730, which states "[t]imely investigations of reported crimes and acts of misconduct will be performed by VA police officers," as well as 38 U.S.C. § 902(a)(1)(E), which provides "[VA] police officers shall, with respect to acts occurring on [VA] property . . . conduct investigations, on and off [VA] property, of offenses that may have been committed on property under the original jurisdiction of [the VA] . . . ." *Id.*; ECF No. 42, at 23. Therefore, Blankenship argues, Booth and Wayman had no discretion in deciding whether to investigate the missing meat slicer. ECF No. 45, at 6.

Even if Blankenship's interpretation is correct, it is inconsequential because Blankenship does not base his claims on Booth and Wayman initiating an investigation. Rather, his claims focus on the many discretionary judgments made by law enforcement during the investigation, principally the decision to file criminal charges against him. *See* ECF No. 34 ¶¶ 47–119. By necessity, Blankenship bases his malicious prosecution claim on his criminal prosecution, not

Booth's and Wayman's initial investigation. *Id.* ¶¶ 120–127; *see Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 547 (W.Va. 2011) (explaining that investigation of a suspected crime without asserting control over a criminal prosecution is insufficient for a malicious prosecution claim). And, his intentional infliction of emotional distress claim describes the relevant period as beginning with his arrest, not the start of the investigation. ECF No. 34 ¶ 129. The simple requirement that Booth and Wayman investigate the alleged theft of the meat slicer does not establish they lacked discretion in determining the methods, aims, and results of the investigation, which are the basis of Blankenship's challenge.

Blankenship next argues that Booth's and Wayman's off-property investigation required approval by the VA's Office of Security and Law Enforcement ("OS&LE"). ECF No. 45, at 6–7 (citing ECF No. 45-3, at 9). VA policy also required submission of a Uniform Offense Report to the OS&LE once the investigation ended. ECF No. 45-3, at 10. However, these general requirements are merely procedural safeguards to a mostly discretionary process. *See Miller v. U.S.*, 163 F.3d 591, 595 (9th Cir. 1998) (holding certain fire suppression standards and procedures did "not eliminate discretion because they do not tell firefighters how to fight the fire"). VA police officers must first exercise discretion in determining whether an incident meets the VA's criteria for off-campus investigations. *See* ECF No. 45-3, at 9; *French v. U.S.*, 195 F. Supp. 3d 947, 955 (N.D. Ohio 2016) (noting that a mandatory VA policy requiring employees to immediately report allegations of patient abuse "fails to bring the VA's alleged conduct out of the discretionary function exception" because, in part, the staff must determine whether the action is abuse). Officers must then exercise discretion in deciding how to conduct an investigation, a process on which the cited VA materials are mostly silent. *See also Pooler*, 787 F.2d at 870–71 (holding VA officials' investigative techniques and initiation of criminal charges were discretionary); *Coltharp v. U.S.*,

413 F. Supp. 3d 1182, 1189 (M.D. Ala. 2019) (holding VA staff members maintained discretion in the enforcement of security policies). As the Fourth Circuit has observed, "[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Holbrook v. U.S.*, 673 F.3d 341, 348 (4th Cir. 2012) (citation omitted). Here, too, the VA's approval and monitoring requirements do not void the significant degree of discretion Booth and Wayman exercised when investigating Blankenship and pursuing his conviction.

Blankenship also questions whether Booth and Wayman complied with the VA's requirement to obtain OS&LE approval (also called "902 authorization") for their off-property investigation. ECF No. 45, at 7–8. A violation of this mandatory regulation, he argues, subjects the United States to liability. *See U.S. v. Gaubert*, 499 U.S. 315, 324 (1991) ("If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy.") However, Booth stated in his declaration that he requested and received OS&LE approval prior to meeting Blankenship. ECF No. 42, at 12 ¶ 20. Wayman also declared to the best of his knowledge that Booth obtained the approval. ECF No. 42, at 106 ¶ 19. Because the United States met its initial evidentiary burden, Blankenship must produce sufficient evidence in the form of depositions, affidavits, or other documentation that demonstrates a triable issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Blankenship's only support, however, is his observation that an Investigative Report filed by Wayman and an Investigative Supplement prepared by Booth do not explicitly state the OS&LE approved their investigation. ECF No. 45, at 7–8; ECF Nos. 45-2, 45-4. Yet, Blankenship provides no reason to assume these documents would indicate OS&LE approval if granted, so the evidence is not probative. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (holding summary

judgment is appropriate if evidence is not significantly probative). His lack of evidence fails to create a triable issue of fact regarding OS&LE approval of the investigation.

Finally, Blankenship believes a "Standard Operating Procedure" document prepared for the VA Medical Center may contain "additional requirements as to how VA Police Officers are to conduct investigations," but he "cannot state with certainty whether the SOP is applicable in this case." ECF No. 45, at 8. Whether or not the document is applicable is a mystery because Blankenship did not produce it, and his unsupported speculation is insufficient to defeat a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986).

In sum, the United States offered substantial evidence that federal law and VA policies afforded Booth and Wayman significant discretion in determining the methods and aims of Blankenship's investigation and prosecution. Blankenship did not meet his burden of showing the officers' conduct was not discretionary, and he failed to offer counter evidence showing a triable issue of fact. *See Welch*, 409 F.3d at 650–51. The Court therefore finds the first prong of the discretionary function exception is met.

**2. The challenged conduct was based on policy considerations.**

Because the Court concluded the challenged conduct was discretionary, the Court presumes the conduct was also grounded in policy. *See Gaubert*, 499 U.S. at 324. Blankenship does not contest this presumption nor could he successfully. Courts have consistently found the exercise of government entities' statutory power to investigate criminal activity and arrest suspects is grounded in public policy. *E.g.*, *Linder v. U.S.*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("[C]riminal investigation and prosecution are rife with legitimate discretion, and [] how discretion is exercised rests on potentially contestable visions of wise policy."); *Blakey v. U.S.S. Iowa*, 991 F.2d 148, 153 (4th Cir. 1993) ("The course that a military investigation takes remains a choice of the officials in

charge and implicates policy considerations, making it subject to the discretionary function exception."); *Kelly v. U.S.*, 924 F.2d 355, 362 (1st Cir. 1992) (holding "decisions to investigate, or not, are at the core of law enforcement activity" and are "precisely the kind of policy-rooted decisionmaking that section 2680(a) was designed to safeguard"); *French v. U.S.*, 195 F. Supp. 3d 947, 955 (N.D. Ohio 2016) (holding VA's delay in investigating alleged abuse by a chaplain was a judgment concerning matters of policy); *Reeves v. U.S. Dep't of Treasury*, 809 F. Supp. 92, 95 (N.D. Ga. 1992) (holding ATF special agent's handling of investigation required policy judgments protected by the discretionary function exception). The Court therefore easily finds the investigation and pursuit of criminal charges against Blankenship required policy-based judgments covered by the discretionary function exception. The second prong is met. The discretionary function exception applies and exempts Counts I and II from the FTCA.

## IV. CONCLUSION

For the foregoing reasons, Blankenship's claims are exempted from the FTCA and precluded by sovereign immunity. Accordingly, the Court **GRANTS** the United States' Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 42, and **DISMISSES** this case with prejudice. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 9, 2020

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE